**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

STUART HEATON, )
)
          Petitioner, )
)
vs. ) CIVIL NO. 07-855-GPM
)
DONALD GAETZ, )
)
          Respondent. )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Petitioner, Stuart Heaton, was convicted of first degree murder by a Fayette County, Illinois, jury in 1992. He was sentenced to life in prison. On December 12, 2007, he filed a petition for habeas relief.[1] The petition has been fully briefed (*see* Docs. 11, 20, and 22), and the Court will rule without a hearing.

### I. BACKGROUND.

The following description of the facts is gleaned from the Rule 23 Order of the Illinois Appellate Court, Fifth District ("Fifth District"), which denied Heaton's post-conviction appeal. (Doc. 11, Ex. M). Sixteen-year-old Krystal Naab was stabbed to death with scissors at her trailer home in Ramsey, Illinois, on July 23, 1991. She suffered some 81 stab wounds and bled to death. The time of death was estimated to be 2:00 p.m.

---

[1] In his petition, Heaton names Don Hulick as the Respondent. According to the Illinois Department of Corrections website, www.idoc.state.il.us, the warden of Menard Correctional Center, the facility where Heaton is billeted, is currently Donald Gaetz. The Court has substituted Gaetz as the Respondent.

DNA testing was done on a semen sample taken from Naab's body. A DNA expert testified that Heaton was the donor of the semen and that the likelihood of a random match was 1 in 52,600. The condition of the trailer indicated that a "massive clean-up effort had been undertaken by the killer." (Ex. M, p.1).

Heaton owned a white pickup truck which had "distinctive hubcaps." Seven witnesses testified that a white pickup truck was seen in the area on the day of the murder. The witnesses were shown a picture of Heaton's truck, which had large toolboxes in the bed. The witnesses testified that the truck that they saw on the day of the murder did not have toolboxes. Heaton's neighbor testified that he helped Heaton put toolboxes in the bed of his truck at about 5:30 or 6:00 p.m. on the day of the murder.

A mailman, Larry Miller, delivered mail to the victim's trailer at about 12:25 p.m. on the day of the murder. Naab was alive then and waved to him. Miller testified that Heaton's truck was parked in the driveway at that time. Miller knew Heaton, and he specifically identified the truck as belonging to him.

Heaton's mother and stepfather, Dovie and Francis Bergen, testified that Heaton came to their home at about 3:25 p.m. on the day of the murder. They lived about 6 miles from the victim's trailer. Heaton was wearing blue sweat pants and no shirt at that time.

Heaton's wife, Karen Heaton, was employed at a hardware store. She testified that her husband visited her at her job during her afternoon break (approximately 4:00 or 4:30 p.m.) on the day in question. Mrs. Heaton's co-worker testified that Karen told her on that day that she was surprised that Heaton had visited her at that time and that he was acting strange. At trial, Mrs. Heaton denied making those statements to the co-worker. Mrs. Heaton further testified that her

husband was probably wearing sweat pants when he dropped her off at work that morning. Two Illinois State Police agents testified, however, that in an interview on the evening of the murder, Karen Heaton said that Heaton had been wearing jeans, a t-shirt, and tennis shoes that morning, and that he was wearing sweat pants and a long-sleeved shirt when he picked her up that afternoon from work. (Ex. M, pp. 3-4).

Photographs taken of Heaton on the evening of the murder showed "numerous small lacerations on his hands, a large laceration on the back of his right calf, and a small cut on his forehead." (Ex. M, p. 4). The pathologist who performed the autopsy on the victim testified that Heaton's wounds were similar to the wounds on the victim and that "both individuals exhibited 'pairing' type wounds that could have been caused by opened scissors." (Ex. M, p. 4).

No blood, hair, fibers, or fingerprints from the scene were linked with Heaton, and no incriminating evidence was found during searches of his truck and residence. (Ex. M, p. 5).

## II. PROCEDURAL HISTORY.

On direct appeal, Heaton claimed:

1. The state's DNA evidence was inadmissible.

2. The trial court erred in admitting photographs of the victim.

3. The evidence was insufficient to prove that Heaton was guilty beyond a reasonable doubt.

4. The state violated Heaton's Fifth Amendment rights by commenting on his silence.

5. Even if certain of these errors were harmless, the cumulative effect of multiple errors requires reversal.

(Def.'s Br. on Direct Appeal, Ex. B. 1-6). The conviction and sentence were upheld by the Fifth District on September 13, 1994. (Doc. 11, Ex. G). On December 6, 1994, the Illinois Supreme

Court denied leave to appeal. (Doc. 11, Ex. I).

On June 26, 1995, Heaton filed a petition for post-conviction relief which raised the following claims:

1. Ineffective assistance of counsel based on the trial attorney's failure to submit the NRC report [an exhaustive study of DNA profiling and procedures] into evidence, thereby waiving an evidentiary objection to the State's faulty DNA testing.

2. Ineffective assistance of counsel in failing to investigate the case and present exculpatory evidence at trial.

3. Ineffective assistance of counsel in failing to request a sample of the forensic DNA material for independent testing.

4. Ineffective assistance of counsel in failing to present mitigating evidence at the sentencing hearing.

5. Newly discovered evidence and the prosecution's suppression of material exculpatory evidence entitles Heaton to a new trial.

(Ex. J). The trial court dismissed the petition without an evidentiary hearing. Heaton appealed.

In a Rule 23 Order dated July 29, 1999, the Fifth District affirmed in part, but remanded the case to the trial court for an evidentiary hearing on the issue of ineffective assistance of trial counsel. (Ex. M). The specific issues on remand were whether counsel was ineffective by failing to investigate and present (1) evidence that a man named Ronald Harre had committed the murder, (2) alibi evidence consisting of the testimony of Heaton's mother and sister and phone records; (3) evidence consisting of the number of Dodge Dakota pickup trucks registered in the area, (4) an innocent explanation for the cuts on Heaton's hands, and (5) the reasons for the removal and replacement of the tool boxes on Heaton's truck.

An evidentiary hearing was held on March 12, 2003.[2] The petition was denied, and Heaton appealed. (*See* Ex. T). The Fifth District affirmed in a Rule 23 Order dated December 5, 2007. (Ex. W). The Illinois Supreme Court denied leave to appeal on September 26, 2007. (Ex. Y).

Heaton timely filed his habeas petition in this Court on December 7, 2007.

### III. GROUNDS FOR HABEAS RELIEF.

Heaton asserts the following grounds for habeas relief:

1. Trial counsel was ineffective by failing to investigate and to present evidence, including evidence of telephone records showing that Heaton was at his sister's home at 3:24 p.m., and evidence that it was impossible to drive from the murder scene to his sister's house in nine minutes.

2. He was denied his right to appeal the denial of his postconviction petition after the evidentiary hearing because the appellate court did not discuss evidence which indicated that Heaton called the hardware store from his sister's house at 3:24 p.m.

3. Trial counsel was ineffective as demonstrated in the evidentiary hearing on his petition for post-conviction relief.

Heaton's second ground was first raised in his Petition for Rehearing before the Fifth District. The Court denied the petition. Subsequently, Heaton raised the claim in his Petition for Leave to Appeal filed with the Illinois Supreme Court. (Ex. X. 18-19).

### IV. ANALYSIS.

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent

---

[2] The hearing was delayed in part due to Heaton's request for time to investigate allegations that the DNA sample had been tampered with. (*See* Ex. Q).

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Habeas is not another round of appellate review. Federal courts do not review state court determinations of state law questions on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993). Rather, 28 U.S.C. §2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

Heaton must clear two procedural hurdles before the court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). "Before a federal court may grant *habeas* relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*; *see also*, 28 U.S.C. § 2254(c). In *O'Sullivan v. Boerckel*, the United States Supreme Court specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). *O'Sullivan*, 526 U.S. at 843-846.

Heaton can circumvent this bar to review if he is able to demonstrate cause for his procedural error and establish prejudice resulting from that error, i.e., "cause and prejudice." *Howard v.*

*O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). In order to demonstrate prejudice, Heaton must show that the violation of his federal rights caused him actual and substantial prejudice. *Id.*

Heaton has cleared the first procedural hurdle, exhaustion. He has exhausted all available avenues of relief through the Illinois system because he is time-barred from further pursuing the alleged constitutional errors in a state post-conviction proceeding. (*See* 725 ILCS 5/122-1(c); *see also O'Sullivan*, 526 U.S. at 844 (holding that repetitive petitions are not required)).

Heaton's second ground cannot be considered for two reasons. First, it is procedurally defaulted because it was not presented for one full round of state review. The point was first raised in a petition for rehearing in the Fifth District, after that same court had affirmed the circuit court's denial of post-conviction relief. (Doc. 11, Ex. X, part 1, p. 13). The United States Supreme Court and the Seventh Circuit have held, however, that a claim is not fully and fairly presented to the state courts when it is raised for the first time in a petition for rehearing before the state appellate court or in a petition for leave to appeal. (*See Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004) and cases cited therein). Secondly, the point does not present a federal constitutional issue because a defendant does not have a right to state collateral review at all. *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).

The first and third grounds were properly exhausted and can be considered. These points both relate to the issue of ineffective assistance of counsel for failure to present alibi and mitigating evidence. Whether counsel was ineffective is governed by *Strickland v. Washington*,

466 U.S. 668 (1984). The issue for this Court on habeas is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "Avoiding these pitfalls does not require citation of [Supreme Court] cases - indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 9 (2002) (emphasis in original).

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id.* at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.* at 662 (internal citation omitted).

The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas, federal courts must honor any "reasonable" state court decision – "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 881-882 (7th Cir. 1997).

The Fifth District properly applied the principles enunciated in *Strickland* in its Rule 23 Order. (Ex. W). The briefs of both parties and the court cited *Strickland*, and it is clear that the state court was following the appropriate standard. (Ex. T, U, and W). The *Strickland* analysis is two-pronged; Heaton must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. *Strickland* teaches that the "court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [internal citation omitted]." *Id.*

In its Rule 23 Order, the Fifth District described trial counsel's conduct as follows:

> Defense counsel chose a trial strategy that focused on discrediting the most harmful evidence against his client: DNA evidence suggesting that the defendant had been intimate with the victim sometime before her murder. The defendant chose not to testify to explain his whereabouts, to deny any relationship with the victim, and to deny murdering her. That choice, however, makes defense counsel's strategy of challenging the most incriminating evidence objectively reasonable.

(Ex. W. at 10). Trial counsel's decision to focus on the incriminating DNA evidence was recognized as a reasonable trial strategy. (Ex. W. at 10). Defense counsel testified that he advised Heaton to testify in his own defense so that he could inform the jury that he did not have a relationship with the victim and that he had an alibi. But Heaton chose not to testify. (Ex. W. at 3). The Fifth District found that the decision not to present the testimony of Heaton's sister to be reasonable, given that she did not have firsthand knowledge of his whereabouts. Instead, trial counsel presented witnesses who indicated Heaton had been at a lumber yard during the time his truck was alleged to have been parked in front of the victim's home. Heaton's sister was not at home on the day of the murder, but she was told by Heaton that he had been at her house riding a horse that afternoon. The sister's phone records indicated that a call was placed from her phone to the hardware store where Heaton's wife worked at 3:24 p.m. on the day of the murder. But no witness was able to offer direct testimony that it was Heaton who placed that call (and again, Heaton chose not to testify). Further, the suggestion that Heaton called his wife from his sister's phone at 3:24 p.m. conflicted with his mother's testimony that he was at the mother's house at that same time. The court noted the

following:

> Had defense counsel attempted to present hearsay, secondhand information about the defendant's whereabouts on the day of the murder, the trial court probably would have ruled it inadmissible, and even if it had been admitted, it would not have led the jury to question the DNA evidence.

(Ex. W. at 10).

At the post-conviction evidentiary hearing, Heaton also presented testimony from Paul Ledbetter, who claimed that he had evidence which incriminated a man named Ron Harre in the murder. But Ledbetter did not give this information to law enforcement or to Heaton's attorney before trial. The trial court found Ledbetter's evidence to be "entirely incredible" and discounted it; the Fifth District agreed. (Ex. W at 8). This factual determination is presumed to be correct and has not been rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

Although trial counsel admitted that he could have done a better job and could have presented a more comprehensive defense, the state court correctly held that this admission did not bring trial counsel's performance below the required standard. (Ex. W. at 10). The Fifth District cited *Strickland* for the premise that "[the] standard is not *how* much *more* defense counsel could have done, but, rather, whether what he did was unreasonably deficient." (Ex. W. at 10). The state court found, and this Court agrees, that trial counsel was reasonable in the strategic decisions implemented at trial.

As to prejudice, the state court concluded that, even had the aforementioned evidence been introduced at trial, there was no realistic likelihood that the verdict would have been different. (Ex. W. at 10). The evidence would not have refuted the DNA evidence, and the testimony of the mother and the sister conflicted. Thus, the court concluded that neither prong of the *Strickland* test was

satisfied. *Id*. This is a manifestly reasonable application of *Strickland*. It certainly does not lie "well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

Lastly, the Court notes that Heaton asserts in his first ground that he is actually innocent. A claim of actual innocence, however, does not present independent grounds for habeas relief. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Here, Heaton has not demonstrated a constitutional wrong. The Court denies his petition.

### V. CONCLUSION.

In light of the foregoing, the petition for writ of habeas corpus is **DISMISSED on the merits**. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 1/16/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge